# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 22-cv-00629-NYW

C.D.I.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

      This civil action arises under Titles II and XVI of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") filed by Plaintiff C.D.I.  For the reasons set forth below, the Court respectfully **AFFIRMS** the Commissioner's decision.

## BACKGROUND

      Plaintiff alleges that he became disabled on October 18, 2018 due to the following conditions: cirrhosis of the liver, end stage; kidney failure; hearing loss; vision loss; depression; anxiety; and back pain.  [Doc. 8-5 at 373; Doc. 8-6 at 427].[2]  Given his various ailments, Plaintiff

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only."  D.C.COLO.LAPR 5.2(b).  Accordingly, this Court refers to Plaintiff using his initials only.

[2] When citing to the Administrative Record, the Court utilizes the docket number assigned by the Electronic Case Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents, the Court cites to the document and page number generated by the ECF system, instead of the page numbers assigned by the Parties.

filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 28, 2019. [Doc. 8-5 at 371–73]. The Social Security Administration ("SSA") denied Plaintiff's requests for benefits on August 5, 2019, [Doc. 8-4 at 212], and denied his request for reconsideration on June 11, 2020. [*Id.* at 221]. After a hearing, Administrative Law Judge Debra Boudreau (the "ALJ") entered an order on February 16, 2021 concluding that Plaintiff is not disabled. [Doc. 8-3 at 186–98]. Plaintiff requested that the Appeals Council review the ALJ's decision, and the Appeals Council remanded the case to the ALJ for further consideration. [*Id.* at 205–08].

Another hearing was held before the ALJ on September 14, 2021. [Doc. 8-2 at 36]. Following the hearing, the ALJ issued a decision on November 3, 2021, finding that Plaintiff met the insured status requirements of the Act through December 31, 2023 and that he had not engaged in substantial gainful activity as of his alleged disability onset date of October 18, 2018. [*Id.* at 15, 26]. The ALJ determined that Plaintiff has the following severe impairments: alcoholic cirrhosis of the liver, coronary artery disease, and obesity. [*Id.* at 15].

The ALJ concluded that Plaintiff's determinable impairments significantly limit his ability to perform basic work activities. [*Id.*]. However, the ALJ determined that Plaintiff was not disabled upon finding that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently. He can sit about six hours, and stand or walk a total of about six hours, in an eight-hour workday. He should avoid work at unprotected heights or in close proximity to large, dangerous, moving machinery. He should not operate heavy machinery. He can work in an environment with moderate noise, but he should avoid work in an environment with loud noise.

[*Id.* at 19].

2

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on January 14, 2022, rendering the ALJ's decision the final decision of the Commissioner.  [*Id.* at 1]. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on March 14, 2022.  [Doc. 1].  This matter is now ripe for consideration, and the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1).  For purposes of DIB, the claimant must prove that he was disabled prior to his date last insured.  *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).  In addition, SSI[3] is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant must establish that he was disabled on or prior to his application date.  *See* 20 C.F.R. §§ 416.200, 416.335; *see also* 20 C.F.R. § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

---

[3] SSI is a needs-based program, which requires the claimant to establish financial need, but shares the same standards for determining medical eligibility.  *See, e.g.*, *Ford v. Commissioner*, 816 F. App'x 276, 278 (10th Cir. 2020) (discussing the distinction between DIB and SSI).  Unlike DIB, individuals who reach retirement age may still qualify for SSI.  *See* 42 U.S.C.A. §§ 1382, 1382c.

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

Plaintiff identifies three overall issues in the ALJ's decision which he argues warrant remand. *See generally* [Doc. 12]. First, Plaintiff argues that the ALJ erred in not employing the treating physician rule in assigning weight to the opinions of various medical sources. [*Id.* at 20]. Second, Plaintiff claims that the ALJ improperly discounted Plaintiff's chronic fatigue in issuing the RFC assessment. [*Id.* at 29]. And third, Plaintiff contends that the ALJ erred in evaluating Plaintiff's back pain and spondyloarthropathy condition. [*Id.* at 35]. The Commissioner disagrees with Plaintiff, insisting that the correct standard was used, that substantial evidence supports the ALJ's decision, and that the ALJ properly considered all of the record evidence. *See generally* [Doc. 13]. The Court will address each challenge in turn.

## I.    The Treating Physician Rule

Plaintiff first argues that the ALJ erred in not applying the "treating physician rule" in determining Plaintiff's RFC. [Doc. 12 at 20]. For purposes of background, the treating physician rule previously directed the Commissioner to give more weight to the medical opinions of treating

physicians than the weight afforded to the opinions of non-treating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Broadly, if the treating physician's opinion was well-supported and was consistent with other substantial evidence in the record, the opinion would be given "controlling weight." *Id*. If the opinion was not entitled to controlling weight, the medical opinion was still entitled to deference and was to be weighed against several factors, including the length, nature, and extent of the treating relationship; the consistency between the opinion and the record as a whole; and whether the treating physician was a specialist in the relevant field. *Id*. (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)). This rule aligned with an SSA regulation governing how opinion evidence was to be evaluated. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources"); *see also Langley*, 373 F.3d at 1119 (citing 20 C.F.R. § 404.1527 in explanation of the treating physician rule); *S.L. v. Commissioner*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (recognizing that section § 404.1527(c)(2) "aligned with a rule from prior case law, known as the 'treating physician rule.'").

But "[i]n 2017, the [SSA] rules were changed to no longer 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" *Palan v. Saul*, No. 18-cv-02130-PAB, 2020 WL 2832375, at *3 n.3 (D. Colo. June 1, 2020). Specifically, claims filed after March 27, 2017 are now governed by 20 C.F.R. § 404.1520c, which states that instead of giving more weight to a treating physician's opinion, the Commissioner will consider the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) the medical source's specialization; and (5) other

factors tending to support or contradict the medical source opinion.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Plaintiff argues that despite these new regulations, Tenth Circuit precedent nevertheless required the ALJ to use the treating physician rule.  [Doc. 12 at 21].  More specifically, he contends that "[t]he Commissioner can change [her] regulations to delete the treating source rule, but [s]he cannot change the [Tenth] Circuit substantial evidence standards which are not based on the regulations . . . without a court decision."  [*Id.* at 23].[4]  In addition, he argues that the regulations are not entitled to *Chevron* deference because the Administrative Procedure Act ("APA") grants courts the authority to interpret the term "substantial evidence" in 42 U.S.C. § 405(g).  [*Id.* at 23–28].  In response, the Commissioner argues only that "[t]he Tenth Circuit has recognized that the updated regulations are valid and that the previous hierarchy based on treatment relationship no longer applies," [Doc. 13 at 9], but does not respond directly to Plaintiff's substantive arguments.  For the reasons set forth below, the Court is respectfully unpersuaded by Plaintiff's arguments.

First, Plaintiff argues that the treating physician rule is still good law because "the [Tenth] Circuit has held that in the event of a conflict between an Agency interpretation and existing judicial precedent . . . the Commissioner must apply the [Tenth] Circuit precedent until there is new precedent approving the Agency interpretation."  [Doc. 12 at 23 (citing *Gutierrez-Brizuela v.*

---

[4]  For purposes of clarity, the Court construes Plaintiff's reference to the Tenth Circuit's "substantial evidence standards" as a reference to the Tenth Circuit's former requirement that treating physician opinions be given greater weight than those of non-treating sources, as this is the only specific error he identifies in the ALJ's decision with respect to this issue: "[t]he ALJ did not give [Plaintiff's treating sources] controlling weight.  Instead, the ALJ used the conflicting SSA regulations[,] 20 C.F.R. § 404.1520c(a), §[ ]416.920c(a)[,] as a basis to disregard their opinions. . . . Since the ALJ failed to apply the correct legal test, there is a ground for reversal." [Doc. 12 at 29 (citation omitted)]; *see also* [Doc. 14 at 5 (on Reply, Plaintiff arguing that "[t]he ALJ should have applied the [Tenth] Circuit treating physician rule which mandates that greater or controlling weight be given to Plaintiff's treating physicians instead of the updated social security regulations in 20 CFR § 404.1520c(a); §[ ]416.920c(a).")].

*Lynch*, 834 F.3d 1142, 1145 (10th Cir. 2016))].[5]  The Court respectfully disagrees.  "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005).  Stated differently, "[t]he Supreme Court has established that where a prior judicial construction of a statute conflicts with an agency's subsequent interpretation entitled to *Chevron* deference, the judicial construction forecloses the agency's construction 'only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'"  *Manzanares v. Kijakazi*, No. CV 21-2 GBW, 2022 WL 4129411, at *4 (D.N.M. Sept. 12, 2022) (quoting *Brand X Internet Servs.*, 545 U.S. at 982).

Plaintiff has directed the Court to no Tenth Circuit precedent holding that the Act unambiguously precludes the regulations here. *See generally* [Doc. 12].  In fact, the "[t]he Tenth Circuit has cited the new regulation . . . several times with approval." *S.L.*, , 2022 WL 897104, at *9 (citing *Zhu v. Commissioner*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021); *Tuttle v. Commissioner*, 853 F. App'x 246, 249 n.3 (10th Cir. 2021); *Panas ex rel. M.E.M. v. Commissioner*, 775 F. App'x 430, 439 n.2 (10th Cir. 2019)), as have courts in this District. *See id.* at *9 n.7 (collecting cases).   Furthermore, courts within this Circuit have agreed that "[t]he Tenth Circuit precedent that embodies the Treating Physician Rule . . . was not compelled by unambiguous statutory language, as the Social Security Act is silent as to the proper method for evaluating a treating physician's medical opinion." *Manzanares*, 2022 WL 4129411, at *4; *see*

---

[5] *Gutierrez-Brizuela* involved an appeal from the Board of Immigration Appeals and addresses retroactive application of a BIA decision that was contrary to Tenth Circuit precedent. *See* 834 F.3d at 1144–48.  The Court could locate no caselaw applying *Gutierrez-Brizuela* in the context of the treating physician rule.

*also Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *5 (N.D. Okla. Feb. 14, 2022) ("[T]he [Act is] silent as to the proper method of evaluating a treating physician's medical opinion"); 42 U.S.C. § 423(d)(5)(B) (noting that "[i]n making any determination the Commissioner . . . shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence . . . necessary in order to properly make such determination," but not specifying how the Commissioner is to evaluate such evidence). "Therefore, the [new regulation] displaces contradictory Tenth Circuit precedent unless [the new regulation] is not entitled to *Chevron* deference—i.e., unless it is arbitrary, capricious, or manifestly contrary to a statute." *Manzanares*, 2022 WL 4129411, at *4.

Here, Plaintiff has made no explicit argument that the 2017 regulations are arbitrary, capricious, or manifestly contrary to a statute, *see generally* [Doc. 12 at 20–28], and the Court thus need not reach this issue.[6] *See Manzanares*, 2022 WL 4129411, at *4. The Court notes, however, that other district courts have determined that the 2017 regulations are not arbitrary, capricious, or contrary to statute. *See, e.g.*, *Novak v. Saul*, No. CIV-20-203-STE, 2021 WL 1646639, at *3 (W.D. Okla. Apr. 27, 2021); *Jones v. Saul*, No. 2:19-cv-01273 AC, 2021 WL 620475, at *7 (E.D. Cal. Feb. 17, 2021); *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883 (D. Vt. 2021).

Plaintiff does, however, raise a separate argument suggesting that *Chevron* deference does not apply here—Plaintiff notes that the APA has provided courts with the power to decide "all relevant questions of law and interpret . . . statutory provisions," *see* 5 U.S.C. § 706, and argues

---

[6] Plaintiff does state, in a footnote, that "[s]udden and unexplained change of position, or change that does not take account of legitimate reliance on prior interpretation, may be arbitrary, capricious, or an abuse of discretion." [Doc. 12 at 26 n.21 (brackets omitted)]. This argument is not sufficiently developed to adequately place the issue before the Court. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

that the "issue of the appropriate standard of judicial review under [the Social Security Act] is an issue of law and statute and will naturally be an issue for the Court, and this includes the interpretation of the term 'substantial evidence'" in the Social Security Act.  [Doc. 12 at 23–24]; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive.") (emphasis added).

Plaintiff misinterprets the 2017 regulations.  The revised regulations include procedures concerning *how* an ALJ should consider medical evidence—they do not change the "substantial evidence" standard of review or redefine what constitutes "substantial evidence" under § 405(g). *See* 20 C.F.R. §§ 404.1520c, 416.920(c).  Even after the new regulations, "[c]ourts must still review administrative decisions to determine whether they are supported by substantial evidence." *Dany Z.*, 531 F. Supp. 3d at 883.  "The new regulations do not say otherwise." *Id.*; *see also Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) ("The Court must . . . continue to consider whether the ALJ's analysis has the support of substantial evidence."); *cf. Francis*, 558 F. Supp. 3d at 535 (rejecting similar argument where the plaintiff "ha[d] not stated why or how he believes that the newer standard for weighing medical evidence abrogates the substantial evidence standard of review").

In the alternative, Plaintiff contends that *Chevron* deference does not apply because "there is no ambiguity for the [SSA] to interpret."  [Doc. 12 at 25].  The Court respectfully disagrees. "[W]here a statute is silent or ambiguous as to a specific issue, an agency's 'legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Dany Z.*, 531 F. Supp. 3d at 883 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).  Numerous courts have recognized the Act is silent or ambiguous as to how to properly assign weight to medical source opinions. *See, e.g., Carr v. Comm'r of Soc.*

*Sec.*, No. 1:20-cv-00217-EPG, 2021 WL 1721692, at *3 (E.D. Cal. Apr. 30, 2021) (because the Act does not "address what evidentiary weight should be given to any particular type of physician," concluding that "the statute is ambiguous on the issue of how much weight to give different types of physicians"); *Alexis R. v. Kijakazi*, No. 3:21-cv-00162 (JAM), 2022 WL 4298361, at *6 (D. Conn. Sept. 19, 2022) ("The Social Security Act does not speak unambiguously to the issue of whether an ALJ must give some weight to or otherwise consider the disability determinations made by any other government agency."); *Jarmon*, 2022 WL 55494, at *4 ("The Act requires the Commissioner to obtain a treating physician's medical evidence but leaves open the method of evaluating that evidence. . . . The Commissioner has [been] delegated power to fill in such statutory gaps and later alter them if necessary."). Accordingly, the Court is unpersuaded by Plaintiff's argument that *Chevron* deference does not apply.[7]

"Where, as here, the statute expressly entrusts the [Commissioner] with the responsibility for implementing a provision by regulation, [the Court's] review is limited to determining whether the regulation[] promulgated exceeded the [Commissioner's] statutory authority and whether [it is] arbitrary and capricious." *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Though the Tenth Circuit has not expressly ruled on this issue, the Court believes that it would join numerous other courts in holding that "[b]ecause section 404.1520c falls within the scope of the Commissioner's

---

[7] *Chevron* deference has two steps. "At the first step, we ask whether the statute's plain terms directly address the precise question at issue. If the statute is ambiguous on the point, we defer at step two to the agency's interpretation so long as the construction is a reasonable policy choice for the agency to make." *Brand X Internet Servs.*, 545 U.S. at 986. Though Plaintiff vaguely references some policy concerns surrounding *Chevron* analysis generally, he does not clearly argue that the agency's interpretation is not a reasonable policy choice. *See* [Doc. 12 at 25–27]. The Court thus need not address the second step, *see Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("[I]ssues will be deemed waived if they are not adequately briefed."), but notes that courts have likewise concluded that "the agency's interpretation is a reasonable policy choice for the agency to make for this ambiguous statutory issue." *Carr*, 2021 WL 1721692, at *5.

authority and was not arbitrary and capricious, it abrogates . . . earlier precedents applying the treating-physician rule." *Harner v. Commissioner*, 38 F.4th 892, 896 (11th Cir. 2022); *cf. Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (distinguishing a case that "involved the now-defunct treating physician rule" and concluding that "[u]nder the revised regulations, this rule no longer applies," such that the distinguished case was "both factually and legally inapposite."). The Court is therefore unpersuaded by Plaintiff's argument that the ALJ erred in not applying the treating physician rule to his claim and joins other district courts concluding that the new regulations have replaced the treating physician rule. *See, e.g.*, *Harner*, 38 F.4th at 896; *Francis*, 558 F. Supp. 3d at 535; *Manzanares*, 2022 WL 4129411, at *4; *T.J.D. v. Kijakazi*, No. 20-cv-03209-CMA, 2022 WL 4726027, at *5 (D. Colo. Oct. 3, 2022). Because Plaintiff filed his claim after March 27, 2017, the ALJ applied the correct legal standard under 20 C.F.R. § 404.1520c.[8]

In sum, Plaintiff has not demonstrated reversible error here, and the Court now turns to whether the ALJ's decision was supported by substantial evidence.

## II.   Plaintiff's Chronic Fatigue

Plaintiff was diagnosed with chronic fatigue syndrome ("CFS") in 2021. [Doc. 8-21 at 2621]. In her decision, the ALJ did not include Plaintiff's chronic fatigue in the list of his medically determinable impairments. [Doc. 8-2 at 14, 21–23]. Plaintiff, in his opening brief, claims that the ALJ failed to account for the limitations caused by Plaintiff's chronic fatigue symptoms in determining his RFC. [Doc. 12 at 29]. Specifically, Plaintiff has two contentions:

---

[8] Furthermore, the Court simply notes that, under the treating physician rule, a treating source's opinion is given controlling weight only if it is well-supported and consistent with the record as a whole. *Langley*, 373 F.3d at 1119. For the reasons explained *infra*, the ALJ concluded that Plaintiff's treating sources—Adrian Bickley, PA-C, and Chris Bayley, M.D.—did not provide opinions that were consistent with substantial evidence in the record. In other words, even if the ALJ had applied the treating physician rule, it does not appear that the ALJ would have reached a different conclusion with respect to Plaintiff's underlying claim for benefits.

(1) the ALJ improperly discounted his symptoms of chronic fatigue—specifically, those listed in SSR 14-1p as symptoms of CFS, [*id.* at 29–34]; and (2) the ALJ improperly discounted Dr. Christopher Bayley's opinion on the limiting effects of Plaintiff's chronic fatigue.  [*Id.* at 34–35].

### A.    The ALJ's Consideration of Plaintiff's Chronic Fatigue Signs and Symptoms

Plaintiff argues that the ALJ improperly discounted his symptoms of chronic fatigue at steps two and five.  [*Id.* at 29].  Specifically, he directs the Court to Social Security Ruling 14-1p, which he asserts contains "[t]he relevant standard for chronic fatigue syndrome" and lists symptoms of chronic fatigue, including post-exertional malaise lasting more than 24 hours; self-reported impairments in memory or concentration; headaches of a new type, pattern, or severity; disturbed sleep patterns; and gastrointestinal discomfort.  [*Id.* at 29–30].  Plaintiff goes on to cite record evidence which he contends demonstrates that he suffers from these symptoms; he argues that "[t]he ALJ erred at Step 2 in not considering and not finding [his] chronic fatigue to have more than a minimal effect on [his] ability to work."  [*Id.* at 30–31].  He also argues that the ALJ erred at step five in concluding that his symptoms of fatigue were subjective and not objectively verified because "[his] symptoms of fatigue are consistent with chronic fatigue syndrome as set forth [in] SSR[ ]14-1p."  [*Id.* at 31–32].

***Social Security Ruling 14-1p***.  SSR 14-1p "provides guidance on how [the SSA] develop[s] evidence to establish that a person has a medically determinable impairment of chronic fatigue syndrome."  SSR 14-1p, 2014 WL 1371245, at *1 (S.S.A. Apr. 3, 2014).[9]  The ruling

---

[9] "Although Social Security rulings . . . do not have the force and effect of law, . . . they constitute Social Security Administration interpretations of its own regulations and the statute which it administers.  Accordingly, Social Security rulings are entitled to deference except when they are plainly erroneous or inconsistent with the Act."  *Walker v. Sec'y of Health & Hum. Servs.*, 943 F.2d 1257, 1259–60 (10th Cir. 1991).  "Social Security Rulings are binding on [an] ALJ," *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004), and an ALJ's failure to follow a Social Security

recognizes that CFS is a "syndrome that causes prolonged fatigue lasting 6 months or more, resulting in a substantial reduction in previous levels of occupational, educational, social, or personal activities." *Id.* at *2.  In addition, the ruling notes that the Centers for Disease Control and Prevention ("CDC") "requires the concurrence of 4 or more specific symptoms that persisted or recurred during 6 or more consecutive months of illness and did not pre-date the fatigue," including:

- Postexertional malaise lasting more than 24 hours;

- Self-reported impairment(s) in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;

- Sore throat;

- Tender cervical or axillary lymph nodes;

- Muscle pain;

- Multi-joint pain without joint swelling or redness;

- Headaches of a new type, pattern, or severity; and

- Waking unrefreshed.

*Id.* at *3.  Other symptoms of CFS include muscle weakness, disturbed sleep patterns, visual difficulties, gastrointestinal discomfort, and urinary or bladder problems.  *Id.*

The Ruling states that a person can establish that he or she has a medically determinable impairment of CFS "by providing appropriate evidence from an acceptable medical source." *Id.* at *4.  The claimant cannot rely on a physician's diagnosis alone; instead, the "evidence must document that the physician reviewed the person's medical history and conducted a physical

---

ruling can warrant remand.  *See Vialpando v. Colvin*, No. 13-cv-02004-BNB, 2014 WL 3402513, at *4 (D. Colo. July 10, 2014).

exam." *Id.*  The Commissioner will "review the physician's treatment notes to see if they are consistent with the diagnosis of CFS; determine whether the person's symptoms have improved, worsened, or remained stable; and establish the physician's assessment of the person's physical strength and functional abilities." *Id.*  The Commissioner will find that the person has a medically determinable impairment of CFS "if a licensed physician diagnosed CFS, and this diagnosis is not inconsistent with the other evidence in the person's case record" and if there are "medical signs or laboratory findings" consistent with CFS.  *Id.*

*Step Two*.  With respect to step two, Plaintiff argues that the ALJ erred "in not considering and not finding [his] chronic fatigue to have more than a minimal effect on [his] ability to work." [Doc. 12 at 31].  He notes that, at step two, he "must present medical evidence which shows a significant limitation his of his ability to perform basic work activities," and asserts that this evidentiary burden is *de minimis*.  [*Id.*].  He recounts that he presented evidence to the ALJ that he had complained of very low energy and had difficulties in concentration and memory, headaches, trouble sleeping, and gastrointestinal issues.  [*Id.* at 30–31].  However, Plaintiff does not plainly articulate a specific error in the ALJ's decision.  *See* [*id.*].

Respectfully, the Court finds Plaintiff's argument to be an invitation for the Court to reweigh the evidence that was presented before the ALJ.  *See* [*id.* at 31 (Plaintiff arguing that the ALJ erred in finding that Plaintiff did not meet his evidentiary burden at step two)].  Beyond pointing to Plaintiff's various diagnoses and symptomology, Plaintiff simply argues that the ALJ erred when she did not find more than a minimal effect upon Plaintiff's ability to work.  [*Id.*].  The Court cannot reweigh the evidence in this case, *Smith*, 821 F.3d at 1266, and can only review the ALJ's decision to determine whether it is supported by substantial evidence and the correct legal standards.  *Vallejo*, 849 F.3d at 954.

Though Plaintiff raises no other argument as to the ALJ's step-two analysis, after examining the record, the Court finds that the ALJ properly considered Plaintiff's symptoms and his chronic fatigue diagnosis.  At step two, the ALJ specifically noted that SSR 16-3p, which details how the SSA evaluates a claimant's symptoms, instructs "that an individual's symptoms, such as pain, *fatigue*, shortness of breath, weakness, or nervousness, will not be found to affect the individual's ability to do basic work activities *unless medical signs and laboratory findings show that there is a medically determinable physical or mental impairment(s)* that could reasonably be expected to produce the symptom(s) alleged."  [Doc. 8-2 at 18 (emphasis added)]; *see also* SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

The ALJ recounted Plaintiff's history of chronic fatigue complaints in her decision: during a medical visit on September 30, 2019, Dr. Karin Cesario noted that Plaintiff's complaints of fatigue were likely related to "[obstructive sleep apnea ('OSA')], his psychotropic medications and/or beta blockers."  [Doc. 8-2 at 20; Doc. 8-10 at 1710].  In a follow-up visit on March 31, 2020, Dr. Cesario stated that Plaintiff reported "feeling much better since his psychiatric medications ha[d] been changed," [Doc. 8-2 at 20; Doc. 8-10 at 1705], and that he was the "best that [she had] seen him."  [Doc. 8-2 at 20; Doc. 8-10 at 1707].  The ALJ also noted that Plaintiff reported chronic fatigue and insomnia in August 2020.  [Doc. 8-2 at 20; Doc. 8-15 at 2034].

The ALJ concluded that Plaintiff's reports of fatigue could not "be verified by objective or clinical findings"; for example, though Plaintiff reported only being able to stand for 15 minutes due to his fatigue, the record did not reflect that he reported this to his cardiologist, "when it would have been very important to report all symptoms."  [Doc 8-2 at 21].  The ALJ further determined that to the extent that Plaintiff's reports of fatigue were consistent with the record, they did not support further reduction of his RFC.  [*Id.*].  Stated differently, the ALJ explained why she did not

find his fatigue to be a medically determinable impairment and cited to record evidence to support her reasoning.

To establish a medically determinable impairment of CFS, Plaintiff "must show more than the mere presence of a condition or ailment." *Yoakum v. Astrue*, 479 F. Supp. 2d 1186, 1191 (D. Kan. 2007).  He must provide, in addition to a formal medical diagnosis, either medical signs (established over a period of at least six consecutive months) or laboratory findings before the agency may find a medically determinable impairment.  SSR 14-1p, 2014 WL 1371245, at *4–5.[10] Plaintiff does not direct the Court to any objective documents in the record that he contends the ALJ failed to consider.  *See* [Doc. 12].  In his Reply, he notes that his abnormal sleep study is appropriately considered in the analysis of whether he has a medically determinable impairment. [Doc. 14 at 7].  But the ALJ's decision demonstrates that the ALJ did consider the results of the sleep study in her analysis.  *See, e.g.*, [Doc. 8-2 at 20 ("a sleep study showed mild OSA"); *id.* at 15 ("The medical evidence includes a history of other medically determinable impairments, including . . . obstructive sleep apnea")].  She concluded that, with respect to Plaintiff's OSA,

---

[10] Specifically, SSR 14-1p states that medical signs that indicate the existence of CFS include: "[p]alpably swollen or tender lymph nodes on physical examination; [n]onexudative pharyngitis; [p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; *or any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record*." SSR 14-1p, 2014 WL 1371245, at *4 (emphasis added).  Additionally, under SSR 14-1p, standard laboratory results that can support a finding of CFS include: an elevated antibody titer to Epstein-Barr virus, abnormal MRI brain scans, neurally mediated hypotension, or "any other laboratory findings that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record (for example, an abnormal exercise stress test or *abnormal sleep studies, appropriately evaluated and consistent with the other evidence in the case record*)." *Id.* (emphasis added).  SSR 14-1p also indicates that many unenumerated medical signs and clinically accepted lab findings can be used to determine an MDI of CFS, but this evidence must be "consistent with other evidence in the case record." *Id.*

"there [was] no evidence that th[is] impairment[] resulted in lasting sequelae" and was non-severe. [*Id.* at 15].  Accordingly, the Court finds no error in the ALJ's analysis at step two.

    ***Step Five***.  In addition, Plaintiff argues that the ALJ erred in her step-five analysis because she "failed to recognize the [breadth] of conditions under the chronic fatigue umbrella in SSR 14-1p." [Doc. 12 at 31].  Plaintiff challenges the ALJ's conclusion that his subjective complaints of his fatigue were not supported by objective medical findings as "incorrect"; specifically, he states that "[his] symptoms are consistent with chronic fatigue syndrome as set forth [in] SSR[ ]14-1p"— namely, "co-occurring conditions which cause, contribute, aggravate, or are consistent with [CFS]:" hepatic encephalopathy, hepatic steatosis, major depressive order, irritable bowel syndrome, Barrett's esophagus, and headaches.  [*Id.* at 32].  He argues that the ALJ "should have found that [the] intensity, persistence, and limiting effects of [his] chronic fatigue symptoms [were] supported by the medical evidence, and should have included such in his residual functional capacity assessment."  [*Id.* at 33].

    Importantly, the ALJ concluded that Plaintiff's subjective reports of his *fatigue*, and how his fatigue impacted his daily living—namely, his inability to stand and wash dishes for more than 15 minutes at a time—"[could not] be verified by objective or clinical findings"; she did not call into question or ignore his CFS *diagnosis* or any other diagnoses.  [Doc. 8-2 at 21].  Plaintiff does not explain why the existence of co-occurring conditions which may be "[a]dditional indications of CFS," *see* SSR 14-1p, 2014 WL 1371245, at *3, support his complaints of fatigue or provide evidentiary support to his subjective complaints, such as directing the Court to objective medical evidence demonstrating that these co-occurring conditions could be expected to cause Plaintiff's fatigue.  *See generally* [Doc. 12]; *cf. Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 817 (10th Cir. 2015) (finding no error where "the ALJ did not question the fact of [the claimant's] headaches; he

only discounted her descriptions their severity and disabling effect.  [The ALJ] did so because of the lack of medical evidence to support the subjective nature of her reported symptoms and discrepancies between her statements and the medical evidence.").

Furthermore, the ALJ's decision reflects that the ALJ did consider the existence of co-occurring conditions.  *See, e.g.*, [Doc. 8-2 at 17, 20 (discussing Plaintiff's complaints of depression); *id.* at 15 (referencing Plaintiff's IBS); *id.* at 2021 (discussing Plaintiff's hepatic steatosis); *id.* at 15, 21, 22 (noting Plaintiff's complaints of headaches)].  The ALJ explained that these co-occurring conditions or symptoms did not appear severe from the record.  *See, e.g.*, [*id.* at 15 ("The medical evidence includes a history of other medically determinable impairments, including . . . obstructive sleep apnea, IBS-D, . . . headaches, . . . and GERD.  These impairments appear at one point or another in the medical evidence of record, usually in the context of emergency department or routine office visits.  The record reveals that the claimant received either brief, routine, conservative treatment, or, at times, more involved treatment, but in either case, *there is no evidence that these impairments resulted in lasting sequelae.*") (emphasis added)].  Although Plaintiff disagrees with the ALJ's conclusion, the Court cannot reweigh the evidence that was presented to the ALJ.  *Smith*, 821 F.3d at 1266.

In addition, Plaintiff claims that the ALJ discounted his complaints of fatigue because he did not need a liver transplant, which he argues was erroneous.  [Doc. 12 at 14].  However, the Court does not construe the ALJ's decision as using the lack of a need for a liver transplant as a basis for discounting Plaintiff's subjective complaints of fatigue.  The ALJ, in summarizing a physician assistant's August 5, 2020 notes *about Plaintiff's liver condition*, noted that Plaintiff "had fatigue but it was explained that this was not an indication for transplant evaluation."  [Doc. 8-2 at 21].  But the ALJ did not list this as a reason for discounting Plaintiff's complaints of fatigue,

which she did later in her decision.  *See* [*id.*].  And finally, Plaintiff contends that the ALJ erred in

opining that his fatigue may be medication-related, arguing that "a close reading of the record

suggests that his syncopial episodes were medication elated, but his chronic fatigue symptoms are

not."  [Doc. 12 at 32].  The Court finds no error here.  The ALJ noted that "[t]he evidence shows

reports of fatigue, but [it] is noted in [the] record that this could be medication related."  [Doc. 8-

2 at 22].  Indeed, medical provider notes opine that Plaintiff's fatigue could be caused by his

medication.  *See* [Doc. 8-15 at 2034 (noting that Plaintiff's fatigue is "[m]ultifactorial but high

suspici[on] that undiagnosed OSA and psychiatric medications may be contributing")].  Thus, the

ALJ did not on her own accord attribute Plaintiff's fatigue to his medication, but relied on the

opinions of medical professionals and noted their opinions that such may be the case.

> *Other Arguments*.  Plaintiff also invokes SSR 96-8p in his opening brief, noting that under

this ruling, "an ALJ must base [the RFC] assessment on all of the evidence in the case record."

[Doc. 12 at 33].  In his Reply, he expounds on this, arguing that the ALJ failed to comply with

SSR 96-8p by not including a "thorough discussion and analysis on [his] chronic fatigue."  [Doc.

14 at 9–10].  The Court, however, cannot conclude that the ALJ failed to comply with SSR 96-8p,

which provides that "[t]he RFC assessment must include a narrative discussion describing how the

evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations).  SSR 96-8p, 1996 WL 374184, at *7

(S.S.A. July 2, 1996).  The ALJ noted in her decision:

> The claimant testified at the September 2014 hearing that he had been fatigued in
> the morning and was napping in the afternoon.  He reported an increase in
> headaches, but that is not clear in the record.  He stated that he could not stand at
> the kitchen sink more than 15 minutes to wash dishes because of fatigue.  However,
> reports of fatigue are subjective and cannot be verified by objective or clinical
> findings.  To the extent the claimant's reports are consistent with the record, they
> do not support further reduction in his residual functional capacity.  The claimant's
> testimony of an ability to only stand for 15 minutes and great fatigue were

> apparently not reported to the cardiologist . . ., when it would have been very important to report all symptoms.   Instead, the claimant reported symptoms lasting 5 to 10 minutes and that occur walking upstairs.
>
> \* \* \*
>
> The evidence shows reports of fatigue, but is noted in record that this could be medication related.   The claimant described the fatigue as debilitating, which is not supported by the overall record.   The claimant testified that he helps around the house and he does some work for his roommate's mother.

[Doc. 8-2 at 21, 22].   The ALJ also noted Plaintiff's sleep study and his mild OSA.  *See* [*id.* at 20].   In other words, the ALJ explained her RFC assessment by citing both medical facts and nonmedical evidence in her discussion, as required by SSR 96-8p.   Plaintiff does not articulate a specific reason why this discussion fails to comply with SSR 96-8p or cite any case law in support.  *See* [Doc. 14 at 9–10].

Plaintiff also notes in his brief that the ALJ's hypothetical questions to the vocational experts "did not include [his] symptoms of chronic fatigue" and briefly argues that "to have substantial evidence of [Plaintiff's] ability to adapt to new work, the ALJ should have in included [his] chronic fatigue symptoms in the hypothetical questions."   [Doc. 12 at 33–34].

However, hypothetical questions posed to a vocational expert must account for all of the claimant's *limitations*—not necessarily the claimant's *symptoms*.  *See Palma v. Berryhill*, No. CIV-17-489-R, 2017 WL 6896680, at \*3 (W.D. Okla. Dec. 21, 2017) ("An ALJ's hypothetical question to a VE must contain all the impairments—but only those impairments—included in the RFC."), *report and recommendation adopted*, 2018 WL 387808 (W.D. Okla. Jan. 11, 2018); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) ("The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant.").   Indeed, in this Court's experience, the hypothetical questions posed to vocational experts in these

administrative hearings tend to present hypothetical scenarios concerning a claimant's *functional limitations*, not the claimant's *specific ailments or symptoms*.

Furthermore, "[t]he ALJ's hypothetical questions do not need to include all the limitations to which a claimant has testified.  The ALJ may restrict [her] questions to those limitations [s]he has found to exist based upon substantial evidence in the record." *Boniger v. Chater*, No. CIV. A. 95-2103-GTV, 1996 WL 91880, at *5 (D. Kan. Feb. 15, 1996); *see also Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) ("Without question, the ALJ may restrict the questions to those limitations which he has found to be based upon credible evidence.").  As explained above, the Court finds no error in the ALJ's determination that Plaintiff's fatigue was not a medically determinable impairment.  Accordingly, there was no error in the ALJ's failure to include Plaintiff's symptoms of fatigue in the hypothetical questions posed to the ALJ.

### B.      Dr. Christopher Bayley's Opinion

Next, Plaintiff argues that the ALJ "improperly found Chris Bayley, M.D.'s opinion to be unpersuasive on the effects of [Plaintiff's] chronic fatigue." [Doc. 12 at 34].  Dr. Bayley completed Mental RFC Statements on August 31, 2020 and May 28, 2021.   [Doc. 8-10 at 1759–1762; Doc. 8-16 at 2384–86].  Relevant here, in the 2020 Statement,[11] Dr. Bayley opined that Plaintiff is likely to be off task more than 30% of a workday in a competitive work setting (i.e., working five days per week at eight hours per day) and is likely to miss or be unable to complete four or more workdays per month. [Doc. 8-10 at 1762].  He opined that Plaintiff is unable to obtain and retain work in a competitive work seeing for a continuous period of at least six months. [*Id.*].  Dr. Bayley

---

[11] Plaintiff mentions only the 2020 Statement in his brief, *see* [Doc. 12 at 34–35], and the Court limits its analysis accordingly.

did not utilize the "additional comments and remarks" section to explain his opinion or provide additional findings to support his conclusions.  [*Id.*].

The ALJ found the 2020 Statement (in addition to the 2021 Statement) "not persuasive." [Doc. 8-2 at 24].  The ALJ explained that Dr. Bayley's opinions as to Plaintiff's purported level of impairment were "quite extreme" and noted that the Statements were "check-box type statements [that] lack[ed] support by reference to specific objective findings or narrative explanation."  [*Id.*].  The ALJ also concluded that Dr. Bayley's opinions were "inconsistent with the evidence as a whole, including mental health treatment records largely showing normal mental status examinations," citing numerous medical records in support.  [*Id.*].

Plaintiff challenges the ALJ's evaluation of Dr. Bayley's opinion as "unpersuasive."  [Doc. 12 at 24].  Plaintiff's only express challenge to the ALJ's assessment is that "the ALJ ignores the fact that Dr. Bayley opined that [Plaintiff's] depression [was] related to his liver failure and has a poor prognosis because of his liver failure."  [*Id.* at 34–35].  Plaintiff also argues generally that Dr. Bayley's opinions are consistent with "[Plaintiff's] multiple suicide attempts, and [Dr. Bayley's] notes."  [*Id.* at 34].[12]

The Court is respectfully unpersuaded by Plaintiff's arguments.  He does not explain why Dr. Bayley's statement that Plaintiff's depression is related to his liver failure contradicts the ALJ's conclusion that Dr. Bayley's opinions lacked explanation and were inconsistent with Plaintiff's mental health records.  *See generally* [*id.*].  The fact that Dr. Bayley indicated that Plaintiff's liver

---

[12] Plaintiff raises new arguments for the first time in his Reply.  *See, e.g.*, [Doc. 14 at 10 ("[T]he ALJ said the record as a whole shows largely normal mental status examinations. . . . [T]his is error as the ALJ is not reading the records as a whole."); *id.* at 11 ("[I]t is improper for the ALJ to use portions of evidence favorable to their decision while ignoring other evidence.")].  These arguments could have been raised in Plaintiff's opening brief and were not; accordingly, the Court deems them waived.  *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

failure and depression were interrelated does not establish that Dr. Bayley's two statements were supported by clear medical findings or narrative explanation. *See* 20 C.F.R. § 404.1520c(c)(1). Furthermore, the ALJ did consider Plaintiffs' previous suicide attempts in the context of his mental impairments, but nevertheless noted that his mental examinations were "largely normal." *See* [Doc. 8-2 at 17]. An explanation as to why the ALJ found a medical source's opinion unpersuasive, "along with the ALJ's citation to contrary, well-supported medical evidence, satisfies the requirement that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [medical source's] opinion and the reasons for that weight.'" *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300); *see also Bryce M. v. Saul*, No. CV 20-1071-JWL, 2020 WL 7024303, at *7 (D. Kan. Nov. 30, 2020) (finding no error where "the ALJ pointed to specific contrary or inconsistent evidence and explained why he found [the medical source's] less persuasive or less significant than the contrary or inconsistent evidence" (quotation omitted)). And finally, the Court is not persuaded that the ALJ should have found Dr. Bayley's opinion persuasive because it was consistent with his *own notes*, which does not demonstrate consistency with the record as a *whole*. *See* 20 CFR § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record *as a whole*, the more weight we will give to that medical opinion.") (emphasis added). In sum, the Court finds no error in the ALJ's assessment of Dr. Bayley's opinion.

## III.   Plaintiff's Back Pain and Spondyloarthropathy

Finally, Plaintiff raises arguments concerning his back pain and spondyloarthropathy. He first argues that the ALJ erred in concluding that his back pain was not a severe condition at step two, which resulted in an incorrect RFC opinion at step five. [Doc. 12 at 35–36]. Second, he

asserts that the ALJ erred in discounting the opinion his treating physician assistant, Mr. Bickley. [*Id.* at 37–38].

### A. Evidence of Plaintiff's Back Pain

First, Plaintiff argues that the record contains "medical evidence which supports [his] objective reasons for pain [sic]; when such is coupled with [his] subjective pain complaints, this allows the court to find that his pain significantly affected his ability to work." [Doc. 12 at 36]. Specifically, Plaintiff directs the Court to the following evidence: (1) a February 2021 MRI that showed an L5-S1 disc extrusion and degenerative spondyloarthropathy at L4-5 most significant for causing severe narrowing of the right lateral recess, [Doc. 8-17 at 2390, 2399]; (2) records showing that Plaintiff reported a "[h]istory of chronic lower back pain with intermittent exacerbations," [Doc. 8-21 at 2636]; (3) records showing that Plaintiff reported that sitting, standing, and walking for long periods of time were painful and he had difficult doing "anything more than light duties around the house," [Doc. 8-17 at 2318]; (4) notes stating that, in November 2020, Plaintiff "continue[d] to have poor posture, soft tissue restrictions, and pain," [*id.* at 2320]; and (5) notes demonstrating that Plaintiff reported that physical therapy was making his pain worse. [*Id.* at 2391]. He continues: "the ALJ should have found such [evidence] constituted the *de [minimis]* showing of a medically determinable impairment at Step 2." [Doc. 12 at 36].

Plaintiff's argument requests that the Court reweigh the evidence that was presented to the ALJ and come to a different conclusion, which the Court cannot do. *Smith*, 821 F.3d at 1266. Indeed, Plaintiff directs the Court to no specific error in the ALJ's decision and does not argue that the ALJ failed to consider any particular material evidence. *See generally* [*id.*].[13]

---

[13] The Court notes that it appears that Plaintiff also argues that the ALJ incorrectly determined that his back pain was not a medically determinable impairment. *See* [Doc. 12 at 36]. The ALJ *did*

Furthermore, the Court perceives no error in the ALJ's analysis.  To amount to a "severe" impairment, the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  The ALJ determined that the record evidence did not establish Plaintiff's condition as causing "significant, ongoing, work-related functional limitations lasting at least 12 consecutive months" and concluded that, for this reason, his condition was "non-severe."  [Doc. 8-2 at 16].  Specifically, the ALJ noted that an x-ray of Plaintiff's lumbar spine taken in October 2020 "showed mild multilevel degenerative changes" and that an MRI taken in February 2021 "showed mild right paracentral disc extrusion at L5–21, and degenerative spondyloarthropathy at L4–5 most significant for causing severe narrowing of the right lateral recess."  [*Id.*].  However, she also noted that in May 2021, Plaintiff was "noted to have intermittent exacerbations of lower back pain" and that the "condition was vaguely noted to be affecting activities of daily living, but no specific limitations were noted and the condition was stable overall."  [*Id.*].  And finally, the ALJ noted that "[n]o musculoskeletal abnormalities were noted on physical examination."  [*Id.*].  Plaintiff directs the Court to no evidence that the ALJ failed to consider and does not explain why the ALJ's decision that Plaintiff's condition had not lasted and was not expected to reasonably last 12 consecutive months constitutes reversible error.  *See generally* [Doc. 12].  This Court may not reweigh the evidence before the ALJ and finds that the ALJ adequately explained the reasons why she determined Plaintiff's back pain was not a severe medically determinable impairment.

In addition, Plaintiff's argument that the ALJ "did not consider [his] back[ ]pain/spondyloarthropathy at Step 5 because she found such not to be severe at Step 2," *see*

---

conclude that Plaintiff's back pain was a medically determinable impairment, but also decided that it was not a *severe* medically determinable impairment.  [Doc. 8-2 at 16].

[*id.* at 37], is not an accurate iteration of the record.  The ALJ stated in her decision that she "considered all of the claimant's medically determinable impairments, *including those that are not severe*, when assessing the claimant's residual functional capacity."  [Doc. 8-2 at 16 (emphasis added)].  Indeed, the ALJ was required to do so.  *See* 20 C.F.R. § 404.1545(e); *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010).  The reviewing court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."  *Flaherty*, 515 F.3d at 1071.  Plaintiff has not provided any reason why the Court should not take the ALJ at her word when she says that she considered Plaintiff's back pain in the RFC determination.  *See generally* [Doc. 12].[14]

Finally, Plaintiff briefly argues that the ALJ erred by not referencing his back pain in the hypothetical questions posed to the vocational experts.  [*Id.* at 37].  But as noted above, the ALJ was not required to mention Plaintiff's specific symptoms in the hypothetical questions.  *Palma*, 2017 WL 6896680, at *3; *Ingram*, 496 F.3d at 1270.  Plaintiff does not explain why the ALJ's hypotheticals—for example, a question about a hypothetical person who could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, or sit or stand for six hours in an eight-hour workday, *see* [Doc. 8-2 at 59]—fail to account for Plaintiff's medically determinable impairment with respect to his back pain.  *See* [Doc. 12]; *see also Klein v. Colvin*, 25 F. Supp. 3d 1338, 1344 (D. Colo. 2014) (concluding that remand was not appropriate where the plaintiff failed to articulate

---

[14] Although the ALJ did not expressly mention Plaintiff's back pain in her RFC determination, *see* [Doc. 8-2 at 19–22], this is not necessarily in error.  "While the record must demonstrate the ALJ considered all of the evidence, there is no requirement an ALJ discuss every piece of evidence." *Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) (quotation omitted); *cf. Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error where, although the ALJ did not specifically mention the claimant's obesity in the RFC assessment, the ALJ did include specific postural limitations and the claimant failed to show that the evidence obesity required greater functional limitations).

how the functional limitations articulated in the hypothetical questions and his ultimate RFC assessment was inadequate to account for his limitations). The Court finds no error here.

### B.     Mr. Adrian Bickley's Opinion

In the alternative, Plaintiff argues that the ALJ improperly discounted the opinion of Adrian Bickley. [Doc. 12 at 37]. On August 25, 2020, Mr. Bickley issued a Functional Limitations Statement setting forth limitations caused by Plaintiff's back pain. [Doc. 8-10 at 1758]. In this statement, Mr. Bickley indicated that Plaintiff could, at most, sit for fewer than two hours and stand and/or walk for two hours during an eight-hour workday. [*Id.*]. Mr. Bickley also checked boxes indicating that Plaintiff could not work a 40-hour workweek due to his impairments and must lie down periodically throughout the workday due to pain and/or fatigue. [*Id.*]. Additionally, he indicated that Plaintiff would need to miss more than two workdays per month due to his pain. [*Id.*]. Mr. Bickley stated that Plaintiff's "daily living" is affected by "lower back/musculoskeletal pain" and that this opinion was "inferred based on his symptoms." [*Id.*].

In her decision, the ALJ found Mr. Bickley's opinion unpersuasive. [Doc. 8-2 at 23]. The ALJ explained that Mr. Bickley's opinion was "completely unsupported by objective medical evidence or narrative explanation," finding Mr. Bickley's opinion "vague" and noting that Plaintiff's noted symptoms were not attributed to any medically determinable impairments. [*Id.*]. Additionally, the ALJ found Mr. Bickley's opinion contradicted other evidence in the record:

> [M]usculoskeletal and neurologic findings on the [same] date [Mr. Bickley's] opinion was issued were entirely normal, and provide no support for the extreme limitations of sitting less than two hours or standing/walking only two hours in an eight-hour workday or the inability to work a 40-hour week.
>
> [In addition], the longitudinal medical record does not reflect ongoing complaints of difficulty sitting or recommendations by medical sources that the claimant limit his sitting. Even the claimant did not report any problem with sitting in his function report.

[Doc. 8-2 at 23]; *see also* [Doc. 8-6 at 456; Doc. 8-14 at 1843–45].

Plaintiff challenges the ALJ's evaluation of Mr. Bickley's statement as "unpersuasive." [Doc. 12 at 37–38]. First, he argues that Mr. Bickley's opinion was "formed . . . in consultation with an orthopedist and physical therapist." [*Id.* at 38]. This is not reflected in the record; instead, the document Plaintiff cites suggests that Mr. Bickley referred Plaintiff to an orthopedic specialist and a physical therapist. [Doc. 8-14 at 1846]. And in any event, Plaintiff cites no case law demonstrating that even if Mr. Bickley had formulated his opinion with an orthopedist or a physical therapist, this would have rendered his opinion more persuasive. *See* [Doc. 12 at 38].

Next, Plaintiff notes that Mr. Bickley "stated his opinion [was] based on [Plaintiff's] symptoms" and "noted that [Plaintiff's] activities of daily living are affected by his pain." [*Id.*]. Plaintiff does not explain why this makes Mr. Bickley's assessment more persuasive; as previously discussed, under 20 C.F.R. § 404.1520c(c)(1), medical source opinions will be given more weight if they are supported by *objective* medical evidence and supporting explanations and if they are consistent with other medical evidence in the record, including other medical source opinions. 20 C.F.R. § 404.1520c(c)(1).

Lastly, Plaintiff contends that "[t]he mere fact that [Mr. Bickley] opined prior to the MRI does not make his opinion less persuasive considering such was later supported by the MRI." [Doc. 12 at 38]. Plaintiff does not cite any case law in support of this argument or develop it further. [*Id.*]. The Court assumes that Plaintiff's argument is an assertion that Mr. Bickley's opinion is supported by the objective record (i.e., an MRI), and further assumes that the MRI Plaintiff refers to is the MRI taken on February 5, 2021, which revealed "mild right paracentral disc extrusion at L5–S1, and degenerative spondyloarthropathy at L4-5 most significant for causing severe narrowing of the right lateral recess." [Doc. 8-2 at 17; Doc. 8-17 at 2399].

The Court is not persuaded that the MRI taken after Mr. Bickley issued his opinion calls into question the ALJ's conclusion that Mr. Bickley's opinion was "completely unsupported by objective medical evidence and supporting explanations."  *See* [Doc. 8-2 at 23].  Mr. Bickley's report references no objective medical findings; indeed, he states that his opinion is not based on any objective medical records, but is "inferred based on [Plaintiff's] symptoms."  [Doc. 8-10 at 1758].  A "lack of citation to treatment notes and clinical observations" is a permissible reason to discount a medical source's opinion.  *See A.G. v. Commissioner*, No. 21-cv-00439-STV, 2022 WL 2965693, at *9 (D. Colo. July 27, 2022) (citing cases); *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be.") (emphasis added).  While Plaintiff suggests that the February 2021 MRI is consistent with Mr. Bickley's opinion, the ALJ is not a physician, *see Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004), and it would have been outside of her role to independently determine whether Plaintiff's MRI results were medically consistent with the functional limitations suggested by Mr. Bickley, given the lack of support or explanation in Mr. Bickley's report.

In sum, the Court concludes that Plaintiff has not established that the ALJ committed reversible error in denying Plaintiff's applications for benefits.  The Court will affirm the Commissioner's decision.

## CONCLUSION

The decision of the Commissioner is respectfully **AFFIRMED**.

DATED:  February 27, 2023                     BY THE COURT:

_____
Nina Y. Wang
United States District Judge